**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLADYS ESPINAL, on behalf of herself and all others similarly situated, | Civil Action No. 17-5641 |
| *Plaintiff*, | **OPINION** |
| v. | |
| ENHANCED RECOVERY COMPANY, LLC, | |
| *Defendant*. | |

**John Michael Vazquez, U.S.D.J.**

In this matter, Plaintiff Gladys Espinal alleges that a debt collection letter that Defendant Enhanced Recovery Company, LLC ("Defendant" or "ERC") sent Plaintiff violated the Fair Debt Collection Practices Act ("FDCPA"). The following motions are presently pending before the Court: (1) Defendant's motion for summary judgment, D.E. 48; (2) Plaintiff's cross-motion for summary judgment, D.E. 53; and (3) Plaintiff's motion for class certification, D.E. 54. The Court reviewed all submissions[1] made in support and opposition of the motions, and considered the

---

[1] Defendant's brief in support of its motion for summary judgment ((D.E. 48-1) will be referred to as "Def. Br."; Plaintiff's brief in support of her cross-motion and in opposition to Defendant's motion for summary judgment (D.E. 53-1) will be referred to as "Plf. Opp."; Defendant's brief in opposition to the cross-motion and reply in support of its motion (D.E. 58) will be referred to as "Def. Reply"; Plaintiff's reply in further support of her cross-motion (D.E. 64) will be referred to as "Plf. Reply"; Defendant's supplemental brief in support of its motion for summary judgment (D.E. 68) will be referred to as "Def. Supp. Br."; and Plaintiff's supplemental brief (D.E. 71) will be referred to as "Plf. Supp. Br."

Plaintiff's brief in support of her motion for class certification (D.E. 54-1) will be referred to as "Plf. Class Cert. Br."; Defendant's memorandum of law in opposition to Plaintiff's motion for class certification (D.E. 59) will be referred to as "Def. Class Cert. Opp."; and Plaintiff's reply brief (D.E. 62) will be referred to a "Plf. Class Cert. Reply".

motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons that follow, Defendant's motion is **GRANTED in part and DENIED in part**, and Plaintiff's cross-motion for summary judgment and motion for class certification are **DENIED**.

## I.   FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

As the parties are familiar with the factual background, the Court only briefly recounts the key facts here.  On August 1, 2016, ERC sent Plaintiff a letter stating that she had an unpaid balance with Time Warner Cable, and that her Time Warner Cable account had been placed with ERC for collection efforts (the "Debt Collection Letter" or "Letter").  DSOMF ¶ 12; Decl. of Richard Landoll ("Landoll Decl."), Ex. G.

The Debt Collection Letter provides in part as follows:

> A portion of your balance may include fees due to unreturned Time Warner Cable equipment. Once your Time Warner Cable equipment is returned, your outstanding balance may be credited up to the value of the equipment returned. At that point we can offer you several options for resolving the remaining balance. If you do not have your Time Warner Cable equipment or cannot return it, your entire balance is being called due now.
>
> This letter serves as notification that your delinquent account may be reported to the national credit bureaus.
>
> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

Landoll Decl. Ex. G at 1.  Approximately half-way down the front of the Debt Collection Letter, it states: "**NOTICE – SEE REVERSE SIDE FOR IMPORTANT NOTICES AND CONSUMER RIGHTS**."  *Id.* (emphasis in original).  And the following appeared at the top of the second page of the Debt Collection Letter:

---

[2] The factual background is taken from Defendant's Statement of Undisputed Material Facts ("DSOMF") (D.E. 43-1) and Plaintiff's Response and Counterstatement of Material Facts ("PSOMF") (D.E. 45-1, -2).

**Federal Validation Notice:**

Pursuant to 15 U.S.C./1692g(a), take notice that:

1. The amount of the claimed debt is the amount stated in the letter on the reverse side of this notice.

2. The name of the creditor to whom the debt is owed is in the letter on the reverse side of this notice.

3. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

4. If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

5. Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the letter on the reverse side of this notice.

*Id.* at 2.  In addition, the Debt Collection Letter only refers to Defendant as ERC.  *Id.*  The name

Enhanced Recovery Company, LLC does not appear in the Debt Collection Letter.

After receiving the Debt Collection Letter, Plaintiff filed this putative class action alleging

violations of the FDCPA, 15 U.S.C. § 1692 *et seq*., in her one-count Complaint on August 1, 2017.

D.E. 1.  On October 16, 2019, the parties were granted leave to file motions for summary

judgement, and Plaintiff was also granted leave to file a motion for class certification.  D.E. 46.

Defendant subsequently filed its motion for summary judgment, D.E. 48, Plaintiff then filed her

cross-motion for summary judgment, D.E. 53, and motion to certify a class, D.E. 54.

## II.    SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit

under the governing law" and is genuine "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary

judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment."  *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250-51.  Finally, "[t]he standard by which the court decides a summary judgment motion does not change when the parties

filed cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002).

### III.   ANALYSIS

#### A.  False or Misleading Representations

The FDCPA "creates a private right of action against debt collectors who fail to comply with its provisions." *Grubb v. Green Tree Servicing, LLC*, No 13-07421, 2014 WL 3696126, at *4 (D.N.J. July 24, 2014). The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692a. "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013), *overturned on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020) (*en banc*). To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)). "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d

Cir. 2014).  The parties here do not dispute that Plaintiff is consumer, Defendant is a debt collector, or that Defendant was attempting to collect a debt from Plaintiff.  The critical issue here is whether any part of Defendant's Debt Collection Letter violated the FDCPA.

Plaintiff alleges that ERC violated, among other provisions of the FDCPA, Section 1692e through the contents and layout of the Debt Collection Letter.  Section 1692e, "False or Misleading Representations," in relevant part, provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Plaintiff seeks summary judgment as to four violations of Section 1692e; the Court addresses each in turn below.

### 1.  Overshadowing Due to Repetition Argument

Plaintiff first alleges that the format of the Debt Collection Letter overshadows her Section 1692g rights and violates Section 1692e because some of the required validation language appeared on the front and back of the Letter.  ERC put the entire validation notice on the back of the Debt Collection Letter and repeated the Section 1692g(a)(3) disclosure on the front.  *See* Landoll Decl. Ex. G.  Both parties seek summary judgment for this claim.

Section 1692g(a), "Validation of Debts," in relevant part, provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the

> debt will be assumed to be valid by the debt
> collector;
>
> (4) a statement that if the consumer notifies the debt
> collector in writing within the thirty-day period
> that the debt, or any portion thereof, is disputed,
> the debt collector will obtain verification of the
> debt or a copy of a judgment against the
> consumer and a copy of such verification or
> judgment will be mailed to the consumer by the
> debt collector; and
>
> (5) a statement that, upon the consumer's written
> request within the thirty-day period, the debt
> collector will provide the consumer with the
> name and address of the original creditor, if
> different from the current creditor.

15 U.S.C. § 1692g(a).  The validation notice must be "conveyed effectively to the debtor." *Wilson*,

225 F.3d at 354.  This means that the validation notice must be "sufficiently prominent" and cannot

be "overshadowed or contradicted by accompanying messages or notices from the debt collector."

*Id.* at 355.

   Here, Plaintiff contends that the dual inclusion of the (a)(3) disclosure on the front and

back of the Letter improperly overshadowed the complete validation notice on the back, and that

the least sophisticated debtor may think that her (a)(3) rights are more important than the remaining

validation notice.  Plf. Opp. at 13; Plf. Supp. Br. at 4.  Plaintiff also originally maintained that the

(a)(3) language on the front of the Letter overshadowed the complete validation notice on the back

because the (a)(3) notice did not make clear that a debtor had to dispute a debt in writing.  Plaintiff

largely relies on *Caprio v. Healthcare Revenue Recovery Group, LLC*.  The debt collection letter

in *Caprio* contained the required validation notice on the back of the letter, in addition to the

following statement, with bold typeface, on the front page: "If we can answer any questions, or if

you feel you do not owe this amount, **please call** us . . . or write us." *Id.* at 146.  The Third Circuit

determined that because of this statement, the substance of the letter was misleading because it invited a debtor to call, rather than write, to dispute the debt. *Id.* at 151. The Circuit also concluded that the form the letter was misleading because the words "please call" and the phone number in the body of the letter were in bold, and the phone number in the letterhead at the top of the letter was in a larger font than the address. In addition, "the required Validation Notice was relegated to the back side of the Collection Letter." *Id.* at 152. Thus, the Circuit determined that the letter would lead the least sophisticated debtor to believe that he could call to dispute his debt. *Id.*

The conclusion in *Caprio* depended on Third Circuit precedent that "subsection (a)(3) . . . contemplates that any dispute, to be effective, *must be in writing*." *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (emphasis added). While the instant motions were pending, however, the Third Circuit determined that Section 1692g(a)(3) does not require disputes to be in writing. *Riccio*, 954 F.3d at 590. In *Riccio*, the Third Circuit, sitting *en banc*, overturned *Graziano*, concluding that "[b]oth traditional *stare decisis* principles and considerations unique to courts of appeals convince us that *Granziano* should be, and now is, overruled." *Id.* at 593. Accordingly, the Circuit found that a debtor may dispute a debt pursuant to Section 1692g(a)(3) orally or in writing. *Id.* at 588.

Despite the fact that Plaintiff's arguments were largely based on the premise that Section 1692g(a)(3) required written disputes, Plaintiff contends that *Riccio* "does not scuttle" her overshadowing argument because the mere repetition itself overshadows the complete validation notice on the back of the Letter. Plf. Supp. Br. at 3-4. Plaintiff continues that by repeating the (a)(3) language, the least sophisticated consumer may conclude that it is more important than the (a)(4) and (a)(5) language. *Id.* at 4. But Plaintiff provides no legal support for her argument.

While *Riccio* did not address the exact issue presented here, it is still instructive.  In analyzing the debt collection letter at issue, the Third Circuit reiterated that "debt collection notices must intelligibly convey the § 1692g(a) requirements," meaning that "a hypothetical 'least sophisticated debtor' should be able to read the notice and reasonably discern her rights." *Riccio*, 954 F.3d at 594 (citations omitted).  Thus, because the debt collection letter, in "plainspoken language reproduce[d] § 1692g(a)(3)-(5) nearly word-for-word," the court determined that the notice "easily clears that bar." *Id.*  The Circuit further explained that "[a] collection notice can never mislead the least sophisticated debtor by relying on the language Congress chose." *Id.*

The Debt Collection Letter here intelligibly conveys the Section 1692g(a) notice requirements.  First, the Debt Collection Letter is virtually identical to the statutory validation notice language.  Although the validation notice was on the back of the Letter, the front of the Letter states "Notice – See Reverse Side for Important Notice and Consumer Rights" in bold, capital letters.  Landoll Decl. Ex. G at 1.  The validation notice appears at the top of the second page, and is entitled "Federal Validation Notice." *Id.* at 2.  In addition, debt collectors are not prohibited from putting the validation notice on the back as "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).  Accordingly, there does not appear to be any attempt to hide or obscure the validation notice.  Next, the (a)(3) notice on the front and back of the Letter is identical so the repeated (a)(3) notice does not make the Debt Collection Letter contradictory.  Finally, the repetition does not overshadow the complete validation notice on the second page of the Debt Collection Letter; to the contrary, the front page of the letter directs the reader – in bold, capital letters -- to the reverse page as to important notice and rights.  Because ERC set forth the entire validation notice together at the top of the second page, even the least sophisticated debtor

9

is appropriately apprised and could "reasonably discern her rights" by reading this section. *Riccio*, 954 F.3d at 594. If anything, the repeated (a)(3) language highlights the fact that a debtor must act within thirty days if she wants to dispute any portion of the debt.

In sum, the Debt Collection Letter effectively conveys the validation notice, and is not rendered false or misleading because of the repetitive language. As a result, summary judgment is granted to Defendant and denied as to Plaintiff on these grounds.

### 2. Use of "Called Due Now" Language

Next, Plaintiff contends that the phrase "your entire balance is being called due now" overshadows the validation notice in violation of Section 1692e and 1692g. Plf. Opp. at 19-21. Although Plaintiff generally alleged that Defendant violated her Section 1692e and 1692g rights, she did not assert these specific allegations in her Complaint. D.E. 1. Moreover, Plaintiff failed to raise this argument in her letter seeking leave to file a motion for summary judgment. D.E. 45. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Federal Rule of Civil Procedure 15(a)." *Nissen v. Rosza*, No. 08-5563, 2011 WL 2517134 at *4 (D.N.J. June 23, 2011) (quoting *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (internal brackets omitted). Plaintiff did not do so here. Instead, Plaintiff asserted a new theory of liability in her cross-motion for summary judgment. Importantly, the parties were only provided leave to file motions for summary judgment as to the issues raised in their pre-motion letters. D.E. 46. Consequently, Plaintiff's motion for summary judgment is denied on these grounds.

### 3. Defendant's True Name

Plaintiff also seeks summary judgment because Defendant used the acronym ERC in the Debt Collection Letter instead of its full name, Enhanced Recovery Company, LLC. Plf. Opp. at

25-28.  Defendant counters that it is entitled to summary judgment because ERC is its true name pursuant to Third Circuit standards.  Def. Br. at 15-24.

Section 1692e(14) prohibits a debt collector from using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  15 U.S.C. § 1692e(14).  In *Levins v. Healthcare Revenue Recovery Group*, the Third Circuit adopted guidance from the Federal Trade Commission ("FTC") as to Section 1692e(14).[3]  *Levins*, 902 F.3d 274, 281 (3d Cir. 2018).  Pursuant to the adopted FTC guidance, a debt collector can use "its full business name, the name under which it usually transacts business, or a commonly-used acronym as long as it consistently uses the same name when dealing with a particular consumer."  *Id.* (internal punctuation omitted) (quoting *Statements of General Policy or Interpretation Staff Commentary of the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988)).

In 2015, Defendant registered ERC with the New Jersey Division of Revenue and Enterprise Services, as an alternate name in collections and customer care.  DSOMF ¶ 3. Defendant also registered ERC as a tradename in Florida, where its principal place of business is located, *id.* ¶¶ 2, 4, and in Delaware, its state of incorporation, *id.* ¶¶ 1, 8.  Moreover, Defendant regularly used the name ERC in connection with its debt collection services since 1998.  *Id.* ¶ 9; *see also* Landoll Decl. ¶ 13.  Thus, ERC is a commonly used acronym for Defendant.  Plaintiff has not pointed to any genuine dispute of material fact that would create an issue in this regard.

---

[3] The FTC enforces the FDCPA and issues guidance on how to interpret the FDCPA.  "Although the FTC's guidance 'does not have the force of law and is not entitled to deference in FDCPA cases,' [the Third Circuit] may adopt its interpretation when [the Circuit] finds its logic persuasive."  *Levins*, 902 F.3d at 281 (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006)).

Plaintiff received two letters from Defendant, and both letters referred to Defendant as ERC.  SOMF ¶¶ 10, 21; *see also* Landoll Decl. Ex. G.  Defendant did not attempt any other communications with Plaintiff.  DSOMF ¶ 24.  Accordingly, Defendant consistently used the acronym ERC in its communications with Plaintiff.  Defendant, therefore, used its true name, pursuant to Section 1692e(14), in connection with the debt collection efforts at issue here.

Plaintiff argues that Defendant violated Section 1692e(14) because, for various reasons, it would be difficult for the least sophisticated debtor to determine that ERC stands for Enhanced Recovery Company, LLC.  Plf. Opp. at 26-28.  But a debtor's ability to know what an acronym stands for is not a requirement.  As discussed, provided that a debt collector is consistent when dealing with a debtor, a commonly used acronym can constitute the debt collector's true name for FDCPA purposes.  *Levins*, 902 F.3d at 281.  Defendant did so here.  Consequently, Defendants' motion for summary judgment is granted on these grounds and Plaintiff's motion is denied.

### 4.   Amount of the Balance Due

Plaintiff contends that the Debt Collection Letter violates Sections 1692e(2), 1692f(1), and 1692g(a)(1) because ERC failed to identify the type and amount of fees included in the balance owed.  Plaintiff continues that this "invites the least sophisticated consumer to speculate" as to what the fees are for.[4]  Plf. Opp. at 22.

A debt collector cannot  falsely represent "the character, amount or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  The Debt Collection Letter states that

> A portion of your balance may include fees due to unreturned Time Warner
> Cable equipment.  Once your Time Warner Cable equipment is returned,

---

[4] Defendant contends that the Court should disregard this claim because it was not properly raised by Plaintiff.  Def. Reply at 18.  Plaintiff set forth this argument in her pre-motion letter and alluded to it in the Complaint.  *See* Compl. ¶ 35 (alleging that ERC failed to itemize what fees were owed).  Accordingly, Plaintiff properly raised this claim.

> your outstanding balance may be credited up to the value of the equipment returned.

Landoll Decl. Ex. G at 1. Plaintiff argues that this statement is confusing because the least sophisticated debtor may think that the fees are separate fees assessed in addition to the amount due. Plf. Opp. at 22. "[A] notice that 'hides the true character of the debt' fails to 'clearly and fairly communicate information about the amount of the debt to the debtors." *LaMonaca v. First States Fin. Servs. Corp.*, No. 18-11829, 2019 WL 2636656, at \*4 (D.N.J. June 26, 2019) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004)).

Defendant counters that the Debt Collection Letter clearly explains that the fees are for unreturned equipment. The Court disagrees in light of the least sophisticated debtor standard. The Letter states that the balance "may" include fees due to unreturned equipment and that if the equipment is returned the balance "may be" credited up to the value of the equipment. Due to the conditional nature of the language – specifically, the use of the word "may," the least sophisticated debtor may be confused as to what the fees are for or if fees were even being assessed against her account. For example, if a debtor returned equipment, the letter does not say that the debtor will be credited – only that the debtor's account may be credited.

Defendant focuses on Plaintiff's use of the word itemize in the Complaint and argues that a debt collector is not required to itemize the balance owed. *See* Def. Br. at 24-25. But the fact that a debt collector is not required to itemize the balance due is a different inquiry than whether the discussion of fees here is false or misleading. Defendant's arguments are, therefore, unavailing. As a result, because of the conditional language in the Debt Collection Letter, the Court cannot conclude as a matter of law that this portion of the Debt Collection Letter is not false or misleading. Plaintiff's and Defendant's motions for summary judgment are denied on these grounds.

### B. Statute of Limitations

ERC maintains that summary judgment should be granted to it because Plaintiff's claims are barred by the statute of limitations. Def. Br. at 36-38. An individual may file suit to enforce the FDCPA's provisions "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019). In this instance, each alleged FDCPA violation arises from the contents or layout of the Debt Collection Letter. Accordingly, the violations occurred when ERC sent the Letter to Plaintiff on August 1, 2016. *See DeStafano v. Udren Law Offices PC*, 802 F. App'x 688, 691 (3d Cir. 2020) (finding that the FDCPA statute of limitations began to run when the foreclosure action was initiated, not when the plaintiff received service of process for the foreclosure action); *see also Rotkiske v. Klemm*, 890 F.3d 422, 425 (3d Cir. 2018) (*en banc*) (concluding that the "one-year limitations period begins to run when a would-be defendant violates the FDCPA"), *aff'd*, 140 S. Ct. at 360.

Federal Rule of Civil Procedure 6(a) provides that when a time period "is stated in days or a longer unit of time exclude the day of the even that triggers the period." Fed. R. Civ. P. 6(a)(1)(A). This means that the date the FDCPA violation occurred is not included in the one-year limitations period. Accordingly, Plaintiff's Complaint, which was filed on August 1, 2017, was timely. *See Broderick v. Viking Client Servs., Inc.*, No. 17-1827, 2017 WL 4269962, at *4 (D.N.J. Sept. 26, 2017) (concluding that FDCPA complaint that was filed exactly one year after the violation occurred was timely); *Diena v. Certified Credit & Collection Bureau, Inc.*, No. 14-769, 2015 WL 570247, at *3 (D.N.J. Feb. 11, 2015) ("[R]equiring suit 'within one year' of an event means that the suit must be filed on or before the anniversary date of the event, not the day before the anniversary.").

Defendant maintains that the one-year limit begins to run the day the Letter was sent, relying on *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 262 (8th Cir. 1992). Therefore, Defendant continues, Plaintiff's Complaint was filed one day late.  In *Mattson*, the Eighth Circuit determined that Rule 6(a) was not applicable because Section 1692k was jurisdictional.  As a result, the Eighth Circuit disregarded Rule 6(a) and determined that the date the FDCPA violation occurred was included in the limitations period.  *Mattson*, 967 F.2d at 262. The case that the Eighth Circuit relied upon to reach this decision, however, has been expressly overruled.  *See Rust v. Qualify Car Corral, Inc.*, 614 F.2d 1118 (6th Cir. 1980), *overruled by Barlik v. U.S. Dept. of Labor*, 62 F.3d 163, 166 (6th Cir. 1995) (*en banc*).  As a result, the reasoning in *Mattson* has been rejected by numerous courts.  *See, e.g.*, *Johnson v. Riddle*, 305 F.3d 1107, 1115 (10th Cir. 2002).  This Court also rejects *Mattson*, and concludes that the date of an alleged FDCPA violation is not included in the statute of limitations computation.  Defendant's motion for summary judgment, therefore, is denied on statute of limitations grounds.

### C.  Standing

ERC also contends that Plaintiff lacks standing to pursue her claims.[5]  The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]"  U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  To establish Article III standing,

---

[5] ERC raised this argument in its reply and opposition to Plaintiff's cross-motion for summary judgment and in opposition to Plaintiff's motion for class certification.  In addition, ERC did not assert this argument in its pre-motion letter seeking leave to file a motion for summary judgment. D.E. 43.  Ordinarily, the Court would disregard this argument as it was not properly raised by Defendant.  However, Article III standing invokes the Court's subject matter jurisdiction. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016).  And Federal Rule of Civil Procedure 12(h)(3) requires a court to dismiss a matter, at any stage of the proceedings, if the Court determines that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  Accordingly, the Court considers Defendant's standing argument.

a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'"  *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)).  An injury in fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1.  A concrete injury refers to one that actually exists; one that is real and not abstract. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted).

Relying on *Spokeo*, ERC argues that Plaintiff lacks standing because she asserts a bare, procedural violation.  Def. Reply at 33-38.  In *Spokeo*, the Supreme Court considered Article III standing under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq. Spokeo, Inc.*, 136 S. Ct. at 1544.  Robins, a consumer, filed a class-action lawsuit against Spokeo asserting that Spokeo was a reporting agency under the FCRA and that it reported incorrect information as to Robins.  *Id.* at 1545-46.  The district court dismissed, finding that Robins did not sufficiently plead an injury in fact.  *Id.* at 1546.  The Ninth Circuit reversed, determining that Robins adequately asserted a particularized injury because Robins alleged that his, rather than another's, statutory rights were violated.  *Id.*  The Supreme Court reversed because the Ninth Circuit only considered the "particularized" prong but failed to consider the "concrete" requirement. *Id.* at 1545.  The Supreme Court remanded for the Ninth Circuit to consider, in the first instance, the concreteness inquiry.  *Id.*

16

The *Spokeo* Court recognized that a concrete injury could encompass both tangible and intangible harm.  *Id.* at 1549 (citations omitted).  The Supreme Court then set forth the proper analysis when addressing an intangible injury:

> In determining whether an intangible harm constitutes injury in fact, *both history and the judgment of Congress play important roles.*  Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in *historical practice*, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.  *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 775–777, (2000).  In addition, because *Congress is well positioned* to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.  Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S. at 578.  Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 580 (opinion concurring in part and concurring in judgment).

136 S. Ct. at 1549  (emphases added).  Yet, the Supreme Court cautioned, a plaintiff does not automatically satisfy the injury-in-fact requirement solely because Congress granted the plaintiff a statutory right along with authorization to bring suit.  *Id.*  The Court in *Spokeo* explained that a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.*  (citation omitted).  By way of example, the *Spokeo* Court observed, it would be difficult to imagine how Robins would have suffered a concrete harm if Spokeo had merely disseminated an incorrect zip code.  *Id.* at 1550.

Nevertheless, the Supreme Court also recognized that the "risk of real harm" could satisfy the concreteness prong.  *Id.* at 1550  (citation omitted).  The Court continued that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury

in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id.* (emphasis in original) (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998)).  Thus, to establish standing, a plaintiff could establish that the defendant violated a procedural right that caused the plaintiff to suffer an intangible but concrete harm.

Defendant relies on a number of cases outside of the Third Circuit to support its argument that Plaintiff lacks standing.  But "an overwhelming majority of the courts in this district have found that various types of violations under § 1692e give rise to concrete, substantive injuries sufficient to establish Article III standing."  *Napolitano v. Ragan & Ragan*, No. 15-2732, 2017 WL 3535025, at *6 (D.N.J. Aug. 17, 2017) (collecting cases).  This Court also concludes that Plaintiff suffered a concrete injury sufficient to establish Article III standing.

The FDCPA is intended to "eliminate abusive debt collection practices and to protect consumers against debt collection abuses."  *Id.*  This includes the right to be free from false or misleading statements from debt collectors.  *See* 15 U.S.C. § 1692e.  Thus, the receipt of a misleading debt collection letter may constitute a concrete injury as this is the precise injury that Congress hoped to stop with the FDCPA.  In this instance, Plaintiff contends that the Debt Collection Letter contained misleading statements in violation of Section 1692e.  This is sufficient to establish a concrete, although intangible injury, such that the alleged statutory violation establishes Plaintiff's standing.  *See, e.g.*, *Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-5646, 2018 WL 6322614, at *5 (D.N.J. Dec. 3, 2018) (finding that debt collection letter with materially misleading statements about late charges constitutes a concrete injury in fact); *Napolitano*, 2017 WL 3535025, at *7 (concluding that debt collection letter that falsely implied that an attorney reviewed the case amounted to a concrete injury in fact).

18

Defendant argues that Plaintiff lacks standing because she was not actually misled and exercised her rights under the FDCPA by requesting a verification of her debt.  Def. Reply at 37-38.  But receipt of the allegedly misleading Debt Collection Letter alone is a sufficient harm. Plaintiff does not need to plead any additional injury, such as the fact that she was actually misled, to establish standing.  The applicable standard turns on the least sophisticated debtor rather than the particular plaintiff.  Consequently, the Court is satisfied that Plaintiff has standing.

## IV.    MOTION TO CERTIFY A CLASS

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23 solely for her repetitive notice claim.  Plf. Class Cert. Br. at 1 n.1.  Because the Court granted Defendant's motion for summary judgment on these grounds and denied Plaintiff's motion for summary judgment, Plaintiff's motion for class certification is denied as moot.

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (D.E. 48) is **GRANTED in part and DENIED in part**, and Plaintiff's cross-motion for summary judgment (D.E. 53) and motion for class certification (D.E. 54) are **DENIED**.  An appropriate Order accompanies this Opinion.

Dated: July 16, 2020

_____
John Michael Vazquez, U.S.D.J.